IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

FILED
IN OPEN COURT

SEP 2 8 2023

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Case No. 1:18-cr-319 |
| NAN HUANG | |
| Defendant. | |

## STATEMENT OF FACTS

The United States and the Defendant, NAN HUANG (hereinafter, "the Defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. Beginning no later than 2012, and continuing through at least January 2015, in the Eastern District of Virginia, and elsewhere the Defendant along with others known and unknown, did knowingly conspire and agree with each other to commit certain offenses against the United States, namely, directly and indirectly, by the use of means and instrumentalities of interstate commerce and of the facilities of a national securities exchange, to willfully use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances, in contravention of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; and (b) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons).

2. On approximately November 18, 2013, in the Eastern District of Virginia, and elsewhere, the Defendant by the use of means and instrumentalities of interstate commerce and of the facilities of a national securities exchange, willfully used and employed, in connection with

the purchase of approximately 800 call options, manipulative and deceptive devices and contrivances, in contravention of Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5.

3. From December 2008 until January 2015, the Defendant was employed as a senior data analyst at Capital One Services, LLC, in Richmond, VA.

4. Capital One Services, LLC was a subsidiary of Capital One Financial Corporation. Capital One Financial Corporation, together with its subsidiaries (collectively referred to as "Capital One"), is a diversified bank holding company that provides a broad spectrum of banking products and financial services to individual consumers and businesses, including credit and debit card products and services.

5. As a Capital One employee, the Defendant owed fiduciary and other duties of trust and confidence to Capital One to maintain the confidentiality of the material, nonpublic information he obtained during his employment. Among other things, these duties prohibited the Defendant from disclosing or trading securities based on this information.

6. The Defendant knew insider trading was against Capital One's policies. Capital One maintained written policies advising its employees that data and information contained in Capital One's systems were "the property of Capital One and must be treated as strictly confidential." Capital One's written policies further advised its employees that "all nonpublic confidential and proprietary business information . . . can be used only for Capital One's business purposes or legally authorized purposes." Capital One's policies further advised, "If you do not have a legitimate business reason to access customer or consumer information, do not seek to do so."

7. The Defendant knew that insider trading was against Capital One's Code of Business Conduct and Ethics, which provided:

> **Do not engage in insider trading or tipping.**
>
> Capital One will not tolerate or excuse violations of insider trading laws. In general, these laws prohibit buying or selling stock in any public company, including Capital One, when you have material information that has not been released to the public.
>
> \* \* \* \*
>
> Material information not available to the public may be provided only to colleagues who need the information to perform their duties. If you have access to such information, you must not use it to buy or sell related securities, stock or derivatives until the second business day after the information has been made public. Even if public announcements are made regarding inside information, you may not release information that you know is still confidential.
>
> \* \* \* \*
>
> When in doubt assume information is material and nonpublic, and do not act upon it. Simply put, you must not take part in any trading that may appear improper.

Capital One required its employees to participate in training periodically to ensure they were aware of its Code of Business Conduct and Ethics. The Defendant repeatedly participated in this training.

8. The Defendant also knew insider trading was against the law. Capital One maintained written policies that advised its employees that engaging in insider trading while in possession of material, nonpublic information was a violation of criminal law, Capital One's policies, and a basis for termination from Capital One. Capital One also maintained written Securities Law Policies that reiterated that its employees could not engage in insider trading while in possession of material, nonpublic information, and that doing so was a crime. Capital One further required its employees to participate in training periodically to ensure that they were familiar with Capital One's Securities Law Policies and the prohibition on insider trading. The Defendant repeatedly participated in training regarding the prohibition on insider trading.

9. Despite these warnings and trainings, and in violation of his fiduciary duty, between 2012 through at least January 2015, the Defendant knowingly engaged in a conspiracy to commit insider trading with Bonan Huang, another then-Capital One employee.

10. As a part of its business, Capital One maintained a large database that recorded credit and debit card activities of its millions of customers. The database could be searched and data regarding credit and debit card transactions could be aggregated by company or merchant, and/or by transaction date. The transaction data contained in the Capital One database was material information not available to members of the public.

11. In his role as a senior data analyst, the Defendant had access to Capital One's transaction database. However, the Defendant repeatedly and excessively accessed the transaction database beyond the scope of his employment. For example, between February 2012 and December 2014, the Defendant and Bonan Huang performed over 15,000 total transaction data queries in the Capital One database, compared to approximately 3,800 queries performed by all 3,000 other Capital One associates during the same time.

12. The Defendant accessed the transaction database thousands of times. At the time, he retrieved material, nonpublic transaction information about publicly traded companies, such as JCPenney, DSW, Coach, Chipotle, Nordstrom, and others. Then the Defendant compiled the nonpublic information on his work computer.

13. Some of the nonpublic Capital One transaction data were highly correlated with the not-yet-public actual revenue reported by the company. In other words, the nonpublic Capital One transaction data usually mirrored and foreshadowed the company's actual revenue.

14. The Defendant and his coconspirator then used Capital One's nonpublic transaction data to make securities trades on multiple national securities exchanges before the companies' quarterly sales announcements and earnings reports.

15. By misappropriating Capital One's transaction data in this way, the Defendant, with the intent to defraud, used the nonpublic transaction data to anticipate increases in securities prices, purchased securities at a lower price, sold the securities at a higher price, then cashed out unfairly gained proceeds.

16. For example, on November 17, 2013, the Defendant accessed Capital One's transaction database and ran queries related to JCPenney—at the time, one of America's largest apparel and home furnishing retailers.

17. On November 18, 2013, based on Capital One's material, nonpublic transaction data, and in advance of JCPenney's earnings report, the Defendant purchased 800 call option contracts on a national securities exchange for a strike price of approximately $8.50 each. A call option gives its holder the right to sell a stock at the specified strike price until a specified expiration date.

18. On November 20, 2013, JCPenney issued a press release reporting positive sales figures for the third quarter of 2013. On the day prior to the press release, JCPenney stock traded at approximately $8.71 per share. But after the announcement, JCPenney stock increased to approximately $9.44 per share.

19. From approximately November 22, 2013, through November 27, 2013, the Defendant sold all 800 call options contracts, and cashed out approximately $23,859 in profit.

20. The Defendant then used the proceeds of his crimes to reinvest in securities.

21. In total, Huang alone performed approximately 6,055 queries in the Capital One transaction database to search and aggregate material, nonpublic information about 216 companies. Due to his crimes, the Defendant achieved a 12,929% return on investment, and the conspiracy accumulated a trading profit of $3,182,860. The Defendant personally received $1,481,511 in fraudulent proceeds.

22. This statement of facts includes those facts necessary to support the plea agreement between the Defendant and the United States. It does not include each and every fact known to the Defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the Defendant's case.

23. The actions of the Defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

Jessica D. Aber
United States Attorney

Date: September 19, 2023    By: _____
Zachary H. Ray
Christopher J. Hood
Assistant United States Attorneys

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, NAN HUANG, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

_____
NAN HUANG

I am the defendant's attorney. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Brooke Rupert, Esq.
Andrew George, Esq.
Cailyn Knapp, Esq.
Dodi Allocca, Esq.
Attorneys for NAN HUANG